**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PROMETHEAN INSULATION TECHNOLOGY LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:13-cv-1113 |
| v. | § § § | |
| SEALED AIR CORPORATION, REFLECTIX, INC., THE HOME DEPOT, INC., and HOME DEPOT U.S.A., INC., | § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**COMPLAINT**

This is an action for patent infringement in which Plaintiff Promethean Insulation Technology LLC ("Promethean") files this Complaint against Defendants Sealed Air Corporation, Reflectix, Inc.,  The Home Depot, Inc., and Home Depot U.S.A., Inc. (collectively, "Defendants"), and alleges as follows:

**PARTIES**

1.      Promethean is a Texas limited liability company having a principal place of business in Plano, TX.

2.      On information and belief, Defendant Sealed Air Corporation ("Sealed Air") is a Delaware corporation having a principal place of business in Elmwood Park, New Jersey.

3.      On information and belief, Defendant Reflectix, Inc. ("Reflectix") is a Delaware corporation having a principal place of business in Markleville, Indiana.

4.      On information and belief, Defendant The Home Depot, Inc. is a Delaware corporation having a principal place of business in Atlanta, Georgia.

5.      On information and belief, Defendant Home Depot U.S.A., Inc. is a Delaware corporation having a principal place of business in Atlanta, Georgia.[1]

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, Title 35 United States Code, particularly §§ 271, 281, 284, and 285.  This Court has subject matter jurisdiction under Title 28 United States Code §§ 1331 and 1338(a).

7.      Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendants' substantial business in this forum, directly or indirectly through subsidiaries or intermediaries, including:  (i) committing at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district. For example, Reflectix and Sealed Air offer for sale and sell infringing reflective insulation through Home Depot stores located throughout this District.

8.      Venue is proper in this Court under Title 28 United States Code §§ 1391 (b) and (c) and 1400(b).  On information and belief, each Defendant has committed and/or induced and/or contributed to acts of patent infringement in this district.

## JOINDER

9.      Joinder is proper under 35 U.S.C. § 299.

10.     Joinder is proper under and in accordance with 35 U.S.C. § 299(a), because (1) Promethean is asserting its right to relief from Defendants for patent infringement jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence,

---

[1] The Home Depot, Inc. and Home Depot U.S.A., Inc. will be collectively referred to as "Home Depot."

or series of transactions or occurrences relating to the using, importing in the United States, offering for sale, or selling the same accused product or process, and (2) questions of fact common to all Defendants will arise in this action.

11.     Upon information and belief, Home Depot is a current seller and installer of reflective insulation products, including but not limited to, for example, Reflective Insulation model number BP24010 ("the accused products"), which are made, used, sold, or offered for sale by Reflectix.

12.     Upon information and belief, Defendants' acts (making, selling, offering for sale, using, and/or importing in the United States) regarding the same products or processes give rise to Promethean's claim for infringement.

13.     Because of Defendants' acts, which upon information and belief rely on the same underlying products or processes, questions of fact common to all Defendants will arise in this action.

### THE PATENTS

14.     On May 3, 2011, United States Patent No. 7,935,410 ("the '410 patent"), titled "Metallized Polymeric Film Reflective Insulation Material," was duly and legally issued.  On August 7, 2012, an ex parte Reexamination Certificate for the '410 patent issued, which confirmed the patentability of claims 1–14.  The '410 patent claims foreign priority to Canadian Patent Application No. 2,544,098, filed April 19, 2006.  A true and correct copy of the '410 patent is attached as **Exhibit A**.

15.     On May 3, 2011, United States Patent No. 7,935,411 ("the '411 patent"), also titled "Metallized Polymeric Film Reflective Insulation Material," was duly and legally issued. The '411 is a continuation-in-part of United States Patent Application No. 11/507,658, now the

'410 patent.   The '411 patent claims foreign priority to Canadian Patent Application No. 2,544,098, filed April 19, 2006.   A true and correct copy of the '411 patent is attached as **Exhibit B**.

16.     On July 17, 2012, United States Patent No. 8,221,871 ("the '871 patent"), also titled "Metallized Polymeric Film Reflective Insulation Material" was duly and legally issued. The '871 patent is a division of United States Patent Application No. 11/507,658, now the '410 patent.   The '871 patent claims foreign priority to Canadian Patent Application No. 2,544,098, filed April 19, 2006.  A true and correct copy of the '871 patent is attached as **Exhibit C**.

17.     On December 11, 2012, United States Patent No. 8,327,601 ("the '601 patent"), titled "Metallized Polymeric Film Reflective Insulation Material" was duly and legally issued. The '601 patent is a division of United States Patent Application No. 11/808,380, now the '411 patent.   The '601 patent claims foreign priority to Canadian Patent Application No. 2,544,098, filed April 19, 2006.  A true and correct copy of the '601 patent is attached as **Exhibit D**.

18.     On January 11, 2013, United States Patent No. 8,343,614 ("the '614 patent"), titled "Metallized Polymeric Film Reflective Insulation Material" was duly and legally issued. The '614 patent is a continuation of United States Patent Application No. 13/086,189, now the '871 patent.   The '614 patent claims foreign priority to Canadian Patent Application No. 2,544,098, filed April 19, 2006.   A true and correct copy of the '614 patent is attached as **Exhibit E**.

19.     Pursuant to 35 U.S.C. § 282, the '410 patent, the '411 patent, the '871 patent, the '601 patent, and the '614 patent ("the patents-in-suit") are presumed valid.

20.     Promethean is the sole owner of all substantial rights in the '410 patent, the '411 patent, the '871 patent, the '601 patent, and the '614 patent, including the exclusive rights to

grant sublicenses to those patents and to file lawsuits and collect damages for past, present and future infringement of one or more of those patents against the Defendants.

## THE PATENTED INVENTION

21.     The patents-in-suit are directed to metallized polymeric film reflective insulation materials.

22.     Regarding surface burning characteristics, reflective insulation materials are classified based on the measurement of two criteria—the rate at which a flame propagates ("the flame spread index"), and the rate at which smoke propagates ("the smoke developed index"). For example, it is recognized in the reflective insulation and radiant barrier industries that materials measured to have a flame spread index 0–25 and a smoke-developed index 0–450 are given a Class A certification.

23.     The reflective insulation and radiant-barrier industry-recognized method for measuring the flame spread index and the smoke developed index involves installing the materials inside a tunnel and then setting them on fire to observe how they react.  This method is set forth in ASTM International standard E84 and is often referred to as "the tunnel test" or "the Steiner tunnel test," after Albert J. Steiner, the gentleman who developed the test.

24.     Prior to September 2009, under the tunnel test, the standard method for installing materials that consisted of membranes or thin laminates inside the tunnel during the tunnel test involved the use of poultry netting (or "chicken wire") to physically support the materials.

25.     As early as 2005, it was widely known among members of the reflective insulation and radiant barrier industries—represented by the Reflective Insulation Manufacturers Association ("RIMA")—that the safety of metal foil reflective insulation and radiant barrier products were being questioned by their competitors, namely manufacturers of fiberglass

insulation products—represented by the North American Insulation Manufacturers Association ("NAIMA").

26.     In particular, NAIMA questioned the poultry netting method of mounting flexible materials as not being consistent with "real world" conditions.  NAIMA had tested the flexible material unsupported in the tunnel, i.e., without the use of poultry netting.  The unsupported materials did not meet the Class A certification criteria, causing NAIMA to conclude that testing the materials with poultry netting enhanced the results of the tunnel test, essentially creating a false sense of security.

27.     With the testing methods being criticized, the reflective insulation and radiant barrier industries were concerned with finding a way to achieve Class A certification under the tunnel test, using a method of mounting that did not include poultry netting.

28.     Concerned with attaining Class A certification without the use of poultry netting, Furio Orologio—president and CEO of Covertech Fabricating, Inc. ("Covertech")—experimented with testing a variety of flexible materials and, in particular, metal foil adhered to polymeric film as early as the spring of 2005.

29.     Through his testing, Mr. Orologio discovered that there is a difference in the degree of fire resistant property of metallized polymeric film on one hand and metal foil on the other.

30.     Through experimentation, Mr. Orologio discovered that metallized polymeric film met Class A certification requirements under the tunnel test without the use of poultry netting as a method of mounting.

31.     Mr. Orologio's test results were surprising—metallized polymeric film consists of components that were generally thought to be flammable, and the metal foil was generally

6

thought to be non-flammable.

32.     Mr. Orologio's discovery was a significant and important technical and commercial advance.

33.     At a time of industry concern, it was Mr. Orologio who discovered the surprising and unexpected advantage of using a metallized polymeric film as a substitute for a metal foil arrangement.

34.     Prior to Mr. Orologio's invention, it was not recognized in the reflective insulation or radiant barrier industries that products using metallized polymeric film met Class A standards under the tunnel test without the use of poultry netting as a method of mounting.

35.     The inventions claimed in the patents-in-suit are directed to various materials satisfying Class A certification (i.e., a flame speed rating value of 0 to 25 and a smoke developed rating value of 0 to 450) as required by industry standards set forth, e.g., in ASTM E 84-09 and all versions thereafter.

## COUNT I
## INFRINGEMENT OF THE '410 PATENT

36.     Defendants, on information and belief, make, use, sell, or offer to sell the accused products that infringe at least claim 1 of the '410 patent.

### Direct Infringement by Home Depot

37.     Promethean incorporates by reference paragraphs 1–35 above as if fully set forth below.

38.     On information and belief, Defendant Home Depot is directly infringing the '410 patent.  Home Depot's direct infringements include performing within the United States the steps of insulating one or more objects with an accused product.  Claim 1 of the '410 patent provides as follows:

1.  A method of thermally insulating an object that requires a Class A standard insulation material having a flame speed rating value of 0 to 25 and a smoke developed rating value of 0 to 450, said method comprising

suitably locating a reflective insulation material in a thermally insulating position adjacent to said object,

wherein said reflective insulation material comprises a bubble-pack assembly having a metallized polymeric film bonded thereto such that said metallized polymeric film is positioned to provide said assembly with a reflective metallized outer surface, said reflective metallized outer surface having a clear, anticorrosion lacquer protective coating thereon,

wherein said metallized polymeric film with the protective coating thereon has a surface thermal emissivity equivalent to or greater than 95% reflectance and

wherein said metallized polymeric film excludes a metal foil on a polymeric film, said insulation material being sufficient to satisfy the requirements for Class A thermal insulation.

39.     On information and belief, Home Depot's performing of steps to insulate one or more objects, such as commercial or residential buildings requiring Class A standard insulation material, with an accused product meets each of the above limitations of claim 1.  Home Depot's performing of steps to insulate one or more objects with an accused products constitutes direct infringement of the '410 patent, and Home Depot is thus liable for infringement of at least claim 1 of the '410 patent pursuant to 35 U.S.C. § 271(a).

40.     Home Depot has profited through direct infringement of the '410 patent.  As a result of Home Depot's unlawful infringement of the '410 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## Inducement of Infringement by Reflectix and Sealed Air

41.     Promethean incorporates by reference paragraphs 1–40 above as if fully set forth below.

42.     Prior to being served with the Complaint in this case, Defendant Reflectix was (and still is) one of the most recognized manufacturers of reflective insulation in the world.  On its website, Reflectix touts itself as the "world leader in the sales of reflective insulations, with the largest distribution network of any competing reflective insulation manufacturer."[2]

43.     Reflectix is a member of RIMA, an organization that represents the community of reflective insulation and radiant barrier manufacturers, associates, and distributors.

44.     On information and belief, Reflectix is a subsidiary of Sealed Air.

45.     In 2006, Monty Millspaugh—President of Reflectix and then-President of RIMA—was aware of the industry-wide concern with finding a way to achieve Class A certification under the tunnel test, using a method that did not involve mounting the materials with poultry netting.

46.     On April 21, 2006, Mr. Millspaugh became aware that Mr. Orologio had filed a Canadian patent application, directed to metallized polymeric film.  Mr. Millspaugh obtained this information through discussions with Mike Boulding and Bob Wadsworth.

47.     On October 1, 2010, Reflectix entered into a patent license agreement with Covertech, covering Canadian Patent No. 2,554,754 ("the '754 CA patent"), which claims priority from Canadian Patent Application No. 2,554,098 ("the '098 CA patent application"); Canadian Patent No. 2,591,589 ("the '589 CA patent"), which also claims priority from the '098 CA patent application; and any "Canadian patents" that issue, either claiming priority from the

---

[2]  *See*  http://www.reflectixinc.com/basepage.asp?PageName=Our+Products%2C+People+%26+Service& PageIndex=666 (copy attached as **Exhibit F**).

'754 CA patent, the '098 CA patent application, Canadian Patent Application No. 2,629,650 ("the '650 CA patent application"), or Canadian Patent Application No. 2,662,991 ("the '991 CA patent application").

48.     Mr. Orologio is the inventor of the '754 CA patent, the '098 CA patent application, the '589 CA patent, the '650 CA patent application, and the '991 CA patent application (collectively, "the Canadian patents and applications").

49.     Both the Canadian patents and applications and the patents-in-suit are directed to metallized polymeric film reflective insulation materials.

50.     On July 17, 2009, Covertech and Mr. Orologio filed a claim for patent infringement of the '754 CA patent against Energie Innovation Inc. and Innovative Energy, Inc. in Canadian Federal Court.  The Canadian Federal Court recently granted Plaintiffs' motion for substitution of parties.  The case is captioned, *Promethean Insulation Technology LLC v. Energie Innovation Inc.*, No. T-1101-09.

51.     On August 7, 2012, counsel for Covertech and Mr. Orologio sent Reflectix a letter regarding the '410 patent, the '411 patent, and the '871 patent ("the August 7, 2012 letter").  In this letter, Reflectix was advised that the '410 patent, the '411 patent, and the '871 patent disclosed metallized polymeric reflective insulation materials.

52.     On August 27, 2012, counsel for Covertech and Mr. Orologio sent Reflectix and Sealed Air a draft license agreement regarding the '410 patent, the '411 patent, the '871 patent, U.S. Patent Application No. 13/086,193 ("the '193 patent application"), and "any further divisionals, continuations, continuations-in-part or reissues filed in the U.S. based on the ['410 patent, the '411 patent, the '871 patent, and the '193 patent application]."

53.     At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air had actual knowledge of the '410 patent as a matter of law.

54.     At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air were willfully blind towards the existence of the '410 patent.

55.     On information and belief, in view of related Canadian litigation and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '410 patent as early as May 3, 2011, its date of issuance.

56.     Since becoming aware of the '410 patent, Reflectix and Sealed Air have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

57.     Since becoming aware of the '410 patent, Reflectix and Sealed Air's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Reflectix and Sealed Air's distributors, Reflectix and Sealed Air's retailers, Reflectix and Sealed Air's customers, and/or reflectixinc.com website users to practice the inventions claimed in the '410 patent with the accused products, and thus directly infringe the '410 patent, either literally or by equivalents.

58.     Since becoming aware of the '410 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice

the inventions claimed in the '410 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '410 patent.

59.     For example, Reflectix and Sealed Air's inducements include knowingly inducing Home Depot—one of their customers and/or retailers—to perform within the United States the steps of insulating one or more objects with an accused product.  Through their website, Reflectix and Sealed Air offer and provide training and service support to their customers, including Home Depot.[3]  Reflectix and Sealed Air installation instructions and warranty information are also available through the Home Depot website.[4]  On information and belief, since becoming aware of the '410 patent, through providing support to Home Depot regarding insulating one or more objects, such as commercial or residential buildings requiring Class A standard insulation material, with an accused product, Reflectix and Sealed Air have known that Home Depot is performing the steps of insulating one or more objects with an accused product, and thereby directly infringing, at least claim 1 of the '410 patent.  On information and belief, despite having this knowledge of infringement, Reflectix and Sealed Air have continued to encourage Home Depot to insulate one or more objects with an accused product.

60.     For these reasons, Reflectix and Sealed Air are liable for inducing infringement of at least claim 1 of the '410 patent under 35 U.S.C. § 271(b).

61.     Reflectix and Sealed Air have profited through inducing infringement of the '410 patent.  As a result of Reflectix and Sealed Air's unlawful infringement of the '410 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover

---

[3] *See* http://www.reflectixinc.com/basepage.asp?PageName=Literature&PageIndex=734 (copy attached as **Exhibit G**).

[4] *See* http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.Um qN8BDO18H (copies attached as **Exhibits H & I**).

from Reflectix and Sealed Air damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

62.     Reflectix and Sealed Air's inducement of infringement of the '410 patent is willful and deliberate, entitling Promethean to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this case under 35 U.S.C. § 285.

## Inducement of Infringement by Home Depot

63.     Promethean incorporates by reference paragraphs 1–62 above as if fully set forth below.

64.     At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '410 patent as a matter of law.

65.     At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '410 patent.

66.     Since becoming aware of the '410 patent, Home Depot has continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

67.     Since becoming aware of the '410 patent, Home Depot's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Home Depot's distributors, Home Depot's retailers, Home Depot's customers, and/or homedepot.com website users to practice the

inventions claimed in the '410 patent with the accused products and thus directly infringe the '410 patent, either literally or by equivalents.

68.     Since becoming aware of the '410 patent, Home Depot has been willfully blind, has known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '410 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '410 patent.

69.     For example, Home Depot's inducements include knowingly inducing its retail customers to perform within the United States the steps of insulating one or more objects with an accused product.  Through its website, Home Depot offers and provides training and service support to its customers.[5]  On information and belief, since becoming aware of the '410 patent, through providing support to its customers regarding insulating one or more objects, such as commercial or residential buildings requiring Class A standard insulation material, with an accused product, Home Depot has known that its customers are performing the steps of insulating one or more objects with an accused product, and thereby directly infringing, at least claim 1 of the '410 patent.  On information and belief, despite having this knowledge of infringement, Home Depot has continued to encourage customers to insulate one or more objects with an accused product.

70.     Home Depot is thus liable for infringement of at least claim 1 of the '410 patent pursuant to 35 U.S.C. § 271(b).

71.     Home Depot has profited through inducing infringement of the '410 patent.  As a result of Home Depot's unlawful infringement of the '410 patent, Promethean has suffered and

---

[5] *See* http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.UmqN8BDO18H (copies attached as **Exhibits H & I**).

will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT II
## INFRINGEMENT OF THE '411 PATENT

72.     Defendants, on information and belief, make, use, sell, or offer to sell the accused products that infringe at least claim 1 of the '411 patent.

### Direct Infringement by Home Depot

73.     Promethean incorporates by reference paragraphs 1–72 above as if fully set forth below.

74.     On information and belief, Defendant Home Depot is directly infringing the '411 patent.   Home Depot's direct infringements include making within the United States an infringing apparatus—one or more objects insulated with an accused product.  Claim 1 of the '411 patent provides as follows:

> 1.   A thermally insulated object requiring and provided with a Class A standard thermal insulation material characterized by a flame speed rating value of from 0 to 25 and a smoke developed rating value of 0 to 450, said object being insulated with said Class A standard thermal insulation material located adjacent to said object, said insulation material comprising a bubble-pack insulation assembly provided with a reflective metallized polymeric film as its exposed outer surface, said metallized polymeric film having a clear, anti-corrosion lacquer coating thereon, wherein said metallized polymeric film with the lacquer coating thereon has a surface thermal emissivity equivalent to or greater than 95% reflectance and wherein said metallized polymeric film excludes a metal foil on a polymeric film.

75.     On information and belief, Home Depot's making of an infringing apparatus— one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation material, insulated with an accused product—meets each of the above

limitations of claim 1.   Home Depot's making of infringing apparatuses constitutes direct infringement of the '411 patent, and Home Depot is thus liable for infringement of at least claim 1 of the '411 patent pursuant to 35 U.S.C. § 271(a).

76.     Home Depot has profited through direct infringement of the '411 patent.  As a result of Home Depot's unlawful infringement of the '411 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## Inducement of Infringement by Reflectix and Sealed Air

77.     Promethean incorporates by reference paragraphs 1–76 above as if fully set forth below.

78.     At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air had actual knowledge of the '411 patent as a matter of law.

79.     At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air were willfully blind towards the existence of the '411 patent.

80.     On information and belief, in view of related Canadian litigation and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '411 patent as early as May 3, 2011, its date of issuance.

81.     Since becoming aware of the '411 patent, Reflectix and Sealed Air have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

82. Since becoming aware of the '411 patent, Reflectix and Sealed Air's advertising and sales of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Reflectix and Sealed Air's distributors, Reflectix and Sealed Air's retailers, Reflectix and Sealed Air's customers, and/or reflectixinc.com website users to practice the inventions claimed in the '411 patent with the accused products, and thus directly infringe the '411 patent, either literally or by equivalents.

83. Since becoming aware of the '411 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '411 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '411 patent.

84. For example, Reflectix and Sealed Air's inducements include knowingly inducing Home Depot—one of their customers and/or retailers—to make within the United States an infringing apparatus—one or more objects insulated with an accused product. Through their website, Reflectix and Sealed Air offer and provide training and service support to their customers, including Home Depot.[6] Reflectix and Sealed Air installation instructions and warranty information are also available through the Home Depot website.[7] On information and belief, since becoming aware of the '411 patent, through providing support to Home Depot regarding making an infringing apparatus—one or more objects, such as commercial or

---

[6] *See* http://www.reflectixinc.com/basepage.asp?PageName=Literature&PageIndex=734 (copy attached as **Exhibit G**).
[7] *See* http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.Um qN8BDO18H (copies attached as **Exhibits H & I**).

residential buildings requiring Class A standard thermal insulation material, insulated with an accused product—Reflectix and Sealed Air have known that Home Depot is making an infringing apparatus and thereby directly infringing, at least claim 1 of the '411 patent.  On information and belief, despite having this knowledge of infringement, Reflectix and Sealed Air have continued to encourage Home Depot to make an infringing apparatus.

85.     For these reasons, Reflectix and Sealed Air are liable for inducing infringement of at least claim 1 of the '411 patent under 35 U.S.C. § 271(b).

86.     Reflectix and Sealed Air have profited through inducing infringement of the '411 patent.  As a result of Reflectix and Sealed Air's unlawful infringement of the '411 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Reflectix and Sealed Air damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

87.     Reflectix and Sealed Air's inducement of infringement of the '411 patent is willful and deliberate, entitling Promethean to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this case under 35 U.S.C. § 285.

**Inducement of Infringement by Home Depot**

88.     Promethean incorporates by reference paragraphs 1–87 above as if fully set forth below.

89.     At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '411 patent as a matter of law.

90.     At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '411 patent.

91.     Since becoming aware of the '411 patent, Home Depot has continued to

intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

92.     Since becoming aware of the '411 patent, Home Depot's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Home Depot's distributors, Home Depot's retailers, Home Depot's customers, and/or homedepot.com website users to practice the inventions claimed in the '411 patent with the accused products, and thus directly infringe the '411 patent, either literally or by equivalents.

93.     Since becoming aware of the '411 patent, Home Depot has been willfully blind, has known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '411 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '411 patent.

94.     For example, Home Depot's inducements include knowingly inducing its retail customers to make within the United States an infringing apparatus—one or more objects insulated with an accused product.  Through its website, Home Depot offers and provides training and service support to its customers.[8]  On information and belief, since becoming aware of the '411 patent, through providing support to its customers regarding making an infringing apparatus—one or more objects, such as commercial or residential buildings requiring Class A

---

[8] *See* http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.Um qN8BDO18H (copies attached as **Exhibits H & I**).

standard thermal insulation material, insulated with an accused product—Home Depot has known that its customers are making an infringing apparatus and thereby directly infringing, at least claim 1 of the '411 patent.  On information and belief, despite having this knowledge of infringement, Home Depot has continued to encourage customers to make an infringing apparatus.

95.    Home Depot is thus liable for infringement of at least claim 1 of the '411 patent pursuant to 35 U.S.C. § 271(b).

96.    Home Depot has profited through inducing infringement of the '411 patent.  As a result of Home Depot's unlawful infringement of the '411 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

### COUNT III
### INFRINGEMENT OF THE '871 PATENT

97.    Defendants, on information and belief, make, use, sell, or offer to sell the accused products that infringe at least claim 18 of the '871 patent.

### **Direct Infringement by Home Depot**

98.    Promethean incorporates by reference paragraphs 1–97 above as if fully set forth below.

99.    On information and belief, Defendant Home Depot is directly infringing the '871 patent.  Home Depot's direct infringements include making within the United States an infringing apparatus—one or more objects insulated with an accused product.  Claim 18 of the '871 patent provides as follows:

20

18. An object insulated with a reflective Class A standard thermal insulation characterized by a flame spread speed rating value of from 0 to 25 and a smoke developed rating value of 0 to 450, said object being insulated with metallized insulation material comprising a reflective metallized polymeric film having a foil-free metallized outwardly exposed surface.

100.    On information and belief, Home Depot's making of an infringing apparatus—one or more objects, such as commercial or residential buildings requiring a Class A standard thermal insulation, insulated with an accused product—meets each of the above limitations of claim 18.  Home Depot's making of infringing apparatuses constitutes direct infringement of the '871 patent, and Home Depot is thus liable for infringement of at least claim 18 of the '871 patent pursuant to 35 U.S.C. § 271(a).

101.    Home Depot has profited through direct infringement of the '871 patent.  As a result of Home Depot's unlawful infringement of the '871 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**Inducement of Infringement by Reflectix and Sealed Air**

102.    Promethean incorporates by reference paragraphs 1–101 above as if fully set forth below.

103.    At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air had actual knowledge of the '871 patent as a matter of law.

104.    At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air were willfully blind towards the existence of the '871 patent.

105.    On information and belief, in view of related Canadian litigation and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual

knowledge of the '871 patent as early as July 17, 2012, its date of issuance.

106.   Since becoming aware of the '871 patent, Reflectix and Sealed Air have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

107.   Since becoming aware of the '871 patent, Reflectix and Sealed Air's advertising and sales of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Reflectix and Sealed Air's distributors, Reflectix and Sealed Air's retailers, Reflectix and Sealed Air's customers, and/or reflectixinc.com website users to practice the inventions claimed in the '871 patent with the accused products, and thus directly infringe the '871 patent, either literally or by equivalents.

108.   Since becoming aware of the '871 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '871 patent and directly infringe, either literally or by equivalents, at least claim 18 of the '871 patent.

109.   For example, Reflectix and Sealed Air's inducements include knowingly inducing Home Depot—one of their customer and/or retailers—to make within the United States an infringing apparatus—one or more objects insulated with an accused product.  Through their website, Reflectix and Sealed Air offer and provide training and service support to their

customers, including Home Depot.[9]   Reflectix and Sealed Air installation instructions and warranty information are also available through the Home Depot website.[10]   On information and belief, since becoming aware of the '871 patent, through providing support to Home Depot regarding making an infringing apparatus—one or more objects, such as commercial or residential buildings requiring a Class A standard thermal insulation, insulated with an accused product—Reflectix and Sealed Air have known that Home Depot is making an infringing apparatus and thereby directly infringing, at least claim 18 of the '871 patent.   On information and belief, despite having this knowledge of infringement, Reflectix and Sealed Air have continued to encourage Home Depot to make an infringing apparatus.

110.   For these reasons, Reflectix and Sealed Air are liable for inducing infringement of at least claim 18 of the '871 patent under 35 U.S.C. § 271(b).

111.   Reflectix and Sealed Air have profited through inducing infringement of the '871 patent.   As a result of Reflectix and Sealed Air's unlawful infringement of the '871 patent, Promethean has suffered and will continue to suffer damage.   Promethean is entitled to recover from Reflectix and Sealed Air damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

112.   Reflectix and Sealed Air's inducement of infringement of the '871 patent is willful and deliberate, entitling Promethean to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this case under 35 U.S.C. § 285.

---

[9] *See* http://www.reflectixinc.com/basepage.asp?PageName=Literature&PageIndex=734 (copy attached as **Exhibit G**).

[10] *See* http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.Um qN8BDO18H (copies attached as **Exs. H & I**).

### Inducement of Infringement by Home Depot

113.    Promethean incorporates by reference paragraphs 1–112 above as if fully set forth below.

114.    At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '871 patent as a matter of law.

115.    At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '871 patent.

116.    Since becoming aware of the '871 patent, Home Depot has continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

117.    Since becoming aware of the '871 patent, Home Depot's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Home Depot's distributors, Home Depot's retailers, Home Depot's customers, and/or homedepot.com website users to practice the inventions claimed in the '871 patent with the accused products, and thus directly infringe the '871 patent, either literally or by equivalents.

118.    Since becoming aware of the '871 patent, Home Depot has been willfully blind, has known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions

claimed in the '871 patent and directly infringe, either literally or by equivalents, at least claim 18 of the '871 patent.

119.    For example, Home Depot's inducements include knowingly inducing its retail customers to make within the United States an infringing apparatus—one or more objects insulated with an accused product.  Through its website, Home Depot offers and provides training and service support to its customers.[11]  On information and belief, since becoming aware of the '871 patent, through providing support to its customers regarding making an infringing apparatus—one or more objects, such as commercial or residential buildings requiring a Class A standard thermal insulation, insulated with an accused product—Home Depot has known that its customers are making an infringing apparatus and thereby directly infringing, at least claim 18 of the '871 patent.  On information and belief, despite having this knowledge of infringement, Home Depot has continued to encourage customers to make an infringing apparatus.

120.    Home Depot is thus liable for infringement of at least claim 18 of the '871 patent pursuant to 35 U.S.C. § 271(b).

121.    Home Depot has profited through inducing infringement of the '871 patent.  As a result of Home Depot's unlawful infringement of the '871 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

### Contributory Infringement by Reflectix and Sealed Air

122.    Promethean incorporates by reference paragraphs 1–120 above as if fully set forth below.

---

[11]  *See*  http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.U mqN8BDO18H (copies attached as **Exs. H & I**).

123.    At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air had actual knowledge of the '871 patent as a matter of law.

124.    At least as early as receipt of the August 7, 2012 letter, Reflectix and Sealed Air were willfully blind towards the existence of the '871 patent.

125.    On information and belief, in view of related Canadian litigation and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '871 patent as early as July 17, 2012, its date of issuance.

126.    Since becoming aware of the '871 patent, Reflectix and Sealed Air have intentionally, actively, and knowingly offered to sell or sold the accused products within the United States or imported the accused products into the United States.

127.    By selling, offering to sell, and/or importing into the United States one or more of the accused products and the components thereof, Reflectix and Sealed Air have contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the accused products to practice the inventions claimed in the '871 patent, and thus directly infringe the '871 patent, either literally or under the doctrine of equivalents.

128.    Since becoming aware of the '871 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the accused products are especially made and/or especially adapted for uses that infringe at least claim 18 of the '871 patent.

129.    The accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

130.    Since becoming aware of the '871 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the accused products are not a staple

article or commodity of commerce suitable for substantial noninfringing use.

131.    For example, Reflectix and Sealed Air offer to sell and sell Home Depot—one of their customers and/or retailers—the accused products.  As demonstrated by the advertising and marketing materials available on both Reflectix and Sealed Air's, and Home Depot's website for the accused products, the accused products have no substantial use other than use in conjunction with insulating one or more objects, such as commercial or residential buildings requiring a Class A standard thermal insulation, with an accused product.

132.    For these reasons, Reflectix and Sealed Air are contributory infringers of at least claim 18 of the '871 patent, either literally or under the doctrine of equivalents.

**Contributory Infringement by Home Depot**

133.    Promethean incorporates by reference paragraphs 1–131 above as if fully set forth below.

134.    At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '871 patent as a matter of law.

135.    At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '871 patent.

136.    Since becoming aware of the '871 patent, Home Depot has intentionally, actively, and knowingly offered to sell or sold the accused products within the United States or imported the accused products into the United States.

137.    By selling, offering to sell, and/or importing into the United States one or more of the accused products and the components thereof, Home Depot has contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the accused

products to practice the inventions claimed in the '871 patent, and thus directly infringe the '871 patent, either literally or under the doctrine of equivalents.

138.    Since becoming aware of the '871 patent, Home Depot has been willfully blind, have known, or should have known that the accused products are especially made and/or especially adapted for uses that infringe at least claim 18 of the '871 patent.

139.    The accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

140.    Since becoming aware of the '871 patent, Home Depot has been willfully blind, have known, or should have known that the accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

141.    For example, Home Depot offers to sell and sells the accused products to customers.  As demonstrated by the advertising and marketing materials available on Home Depot's website for the accused products, the accused products have no substantial use other than use in conjunction with insulating one or more objects, such as commercial or residential buildings requiring a Class A standard thermal insulation, with an accused product.

142.    For these reasons, Home Depot is a contributory infringer of at least claim 18 of the '871 patent, either literally or under the doctrine of equivalents.

## COUNT IV
## INFRINGEMENT OF THE '601 PATENT

143.    Defendants, on information and belief, make, use, sell, or offer to sell the accused products that infringe at least claim 1 of the '601 patent.

## <u>Direct Infringement by Home Depot</u>

144.    Promethean incorporates by reference paragraphs 1–142 above as if fully set forth below.

145.    On information and belief, Defendant Home Depot is directly infringing the '601 patent.  Home Depot's direct infringements include performing within the United States the steps of insulating one or more objects with an accused product.  Claim 1 of the '601 patent provides as follows:

> 1. A method of thermally insulating an object that requires a Class A standard insulation material, characterized by a flame speed rating value of from 0 to 25 and a smoke developed rating value of 0 to 450, said method comprising suitably locating a metallized polymeric reflective insulation material adjacent said object, wherein said polymeric material is selected from a closed cell foam, polyethylene foam, polypropylene foam, expanded polystyrene foam, multi-film layers assembly and a bubble-pack assembly, said material including a reflective metallized polymeric film having a foil-free metallized outwardly exposed surface, said metallized polymeric film having a clear anti-corrosion lacquer coating thereon while retaining a surface thermal emissivity sufficient to meet required emissivity.

146.    On information and belief, Home Depot's performing of steps to insulate one or more objects, such as commercial or residential buildings that require a Class A standard insulation material, with an accused product meets each of the above limitations of claim 1. Home Depot's performing of steps to insulate one or more objects with an accused products constitutes direct infringement of the '601 patent, and Home Depot is thus liable for infringement of at least claim 1 of the '601 patent pursuant to 35 U.S.C. § 271(a).

147.    Home Depot has profited through direct infringement of the '601 patent.  As a result of Home Depot's unlawful infringement of the '601 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**<u>Inducement of Infringement by Reflectix and Sealed Air</u>**

148.    Promethean incorporates by reference paragraphs 1–146 above as if fully set forth below.

149.    At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air had actual knowledge of the '601 patent as a matter of law.

150.    At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air were willfully blind towards the existence of the '601 patent.

151.    On information and belief, in view of related Canadian litigation, prior licensing discussions, and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '601 patent as early as December 11, 2012, its date of issuance.

152.    Since becoming aware of the '601 patent, Reflectix and Sealed Air have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

153.    Since becoming aware of the '601 patent, Reflectix and Sealed Air's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Reflectix and Sealed Air's distributors, Reflectix and Sealed Air's retailers, Reflectix and Sealed Air's customers, and/or reflectixinc.com website users to practice the inventions claimed in the '601 patent with the accused products, and thus directly infringe the '601 patent, either literally or by equivalents.

154.     Since becoming aware of the '601 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '601 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '601 patent.

155.     For example, Reflectix and Sealed Air's inducements include knowingly inducing Home Depot—one of their customer and/or retailers—to perform within the United States the steps of insulating one or more objects with an accused product.  Through their website, Reflectix and Sealed Air offer and provide training and service support to their customers, including Home Depot.[12]   Reflectix and Sealed Air installation instructions and warranty information are also available through the Home Depot website.[13]   On information and belief, since becoming aware of the '601 patent, through providing support to Home Depot regarding insulating one or more objects, such as commercial or residential buildings that require a Class A standard insulation material, with an accused product, Reflectix and Sealed Air have known that Home Depot is performing the steps of insulating one or more objects with an accused product, and thereby directly infringing, at least claim 1 of the '601 patent.  On information and belief, despite having this knowledge of infringement, Reflectix and Sealed Air have continued to encourage Home Depot to insulate one or more objects with an accused product.

156.     For these reasons, Reflectix and Sealed Air are liable for inducing infringement of at least claim 1 of the '601 patent under 35 U.S.C. § 271(b).

---

[12] *See* http://www.reflectixinc.com/basepage.asp?PageName=Literature&PageIndex=734 (copy attached as **Ex. G**).

[13]  *See*  http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.U mqN8BDO18H (copies attached as **Exs. H & I**).

157.    Reflectix and Sealed Air have profited through inducing infringement of the '601 patent.  As a result of Reflectix and Sealed Air's unlawful infringement of the '601 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Reflectix and Sealed Air damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

158.    Reflectix and Sealed Air's inducement of infringement of the '601 patent is willful and deliberate, entitling Promethean to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this case under 35 U.S.C. § 285.

### Inducement of Infringement by Home Depot

159.    Promethean incorporates by reference paragraphs 1–157 above as if fully set forth below.

160.    At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '601 patent as a matter of law.

161.    At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '601 patent.

162.    Since becoming aware of the '601 patent, Home Depot has continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

163.    Since becoming aware of the '601 patent, Home Depot's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by

persuasion, cause, and/or influence the public, Home Depot's distributors, Home Depot's retailers, Home Depot's customers, and/or homedepot.com website users to practice the inventions claimed in the '601 patent with the accused products, and thus directly infringe the '601 patent, either literally or by equivalents.

164.    Since becoming aware of the '601 patent, Home Depot has been willfully blind, has known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '601 patent and directly infringe, either literally or by equivalents, at least claim 1 of the '601 patent.

165.    For example, Home Depot's inducements include knowingly inducing its retail customers to perform within the United States the steps of insulating one or more objects with an accused product.  Through its website, Home Depot offers and provides training and service support to its customers.[14]  On information and belief, since becoming aware of the '601 patent, through providing support to its customers regarding insulating one or more objects, such as commercial or residential buildings that require a Class A standard insulation material, with an accused product, Home Depot has known that its customers are performing the steps of insulating one or more objects with an accused product, and thereby directly infringing, at least claim 1 of the '601 patent.  On information and belief, despite having this knowledge of infringement, Home Depot has continued to encourage customers to insulate one or more objects with an accused product.

166.    Home Depot is thus liable for infringement of at least claim 1 of the '601 patent pursuant to 35 U.S.C. § 271(b).

---

[14]  *See*  http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.U mqN8BDO18H (copies attached as **Exs. H & I**).

167.    Home Depot has profited through inducing infringement of the '601 patent.  As a result of Home Depot's unlawful infringement of the '601 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT V
## INFRINGEMENT OF THE '614 PATENT

168.    Defendants, on information and belief, make, use, sell, or offer to sell the accused products that infringe at least claim 14 of the '614 patent.

### Direct Infringement by Home Depot

169.    Promethean incorporates by reference paragraphs 1–167 above as if fully set forth below.

170.    On information and belief, Defendant Home Depot is directly infringing the '614 patent.  Home Depot's direct infringements include making within the United States an infringing apparatus—one or more objects insulated with an accused product.  Claim 14 of the '614 patent provides as follows:

> 14. An object insulated with a reflective Class A standard thermal insulation characterized by a flame spread speed rating value of from 0 to 25 and a smoke developed rating value of 0 to 450, said object being insulated with metallized insulation material comprising a reflective metallized polymeric film having a foil-free metallized surface.

171.    On information and belief, Home Depot's making of an infringing apparatus— one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation, insulated with an accused product—meets each of the above limitations of claim 14.  Home Depot's making of infringing apparatuses constitutes direct infringement of the

'614 patent, and Home Depot is thus liable for infringement of at least claim 14 of the '614 patent pursuant to 35 U.S.C. § 271(a).

172.    Home Depot has profited through direct infringement of the '614 patent.  As a result of Home Depot's unlawful infringement of the '614 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**Inducement of Infringement by Reflectix and Sealed Air**

173.    Promethean incorporates by reference paragraphs 1–171 above as if fully set forth below.

174.    At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air had actual knowledge of the '614 patent as a matter of law.

175.    At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air were willfully blind towards the existence of the '614 patent.

176.    On information and belief, in view of related Canadian litigation, prior licensing discussions, and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '614 patent as early as January 1, 2013, its date of issuance.

177.    Since becoming aware of the '614 patent, Reflectix and Sealed Air have continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease, and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

178.    Since becoming aware of the '614 patent, Reflectix and Sealed Air's advertising

and sales of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Reflectix and Sealed Air's distributors, Reflectix and Sealed Air's retailers, Reflectix and Sealed Air's customers, and/or reflectixinc.com website users to practice the inventions claimed in the '614 patent with the accused products, and thus directly infringe the '614 patent, either literally or by equivalents.

179.    Since becoming aware of the '614 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '614 patent and directly infringe, either literally or by equivalents, at least claim 14 of the '614 patent.

180.    For example, Reflectix and Sealed Air's inducements include knowingly inducing Home Depot—one of their customers and/or retailers—to make within the United States an infringing apparatus—one or more objects insulated with an accused product.  Through their website, Reflectix and Sealed Air offer and provide training and service support to their customers, including Home Depot.[15]  Reflectix installation instructions and warranty information are also available through the Home Depot website.[16]  On information and belief, since becoming aware of the '614 patent, through providing support to Home Depot regarding making an infringing apparatus—one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation, insulated with an accused product—Reflectix and

---

[15] *See* http://www.reflectixinc.com/basepage.asp?PageName=Literature&PageIndex=734 (copy attached as **Exhibit G**).

[16] *See*  http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.U mqN8BDO18H (copies attached as **Exhibits H & I**).

Sealed Air have known that Home Depot is making an infringing apparatus and thereby directly infringing, at least claim 14 of the '614 patent.  On information and belief, despite having this knowledge of infringement, Reflectix and Sealed Air have continued to encourage Home Depot to make an infringing apparatus.

181.    For these reasons, Reflectix and Sealed Air are liable for inducing infringement of at least claim 14 of the '614 patent under 35 U.S.C. § 271(b).

182.    Reflectix and Sealed Air have profited through inducing infringement of the '614 patent.  As a result of Reflectix and Sealed Air's unlawful infringement of the '614 patent, Promethean has suffered and will continue to suffer damage.  Promethean is entitled to recover from Reflectix and Sealed Air damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

183.    Reflectix and Sealed Air's inducement of infringement of the '614 patent is willful and deliberate, entitling Promethean to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this case under 35 U.S.C. § 285.

### Inducement of Infringement by Home Depot

184.    Promethean incorporates by reference paragraphs 1–182 above as if fully set forth below.

185.    At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '614 patent as a matter of law.

186.    At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '614 patent.

187.    Since becoming aware of the '614 patent, Home Depot has continued to intentionally, actively, and knowingly advertise about, import, export, sell, offer to sell, lease,

and/or offer to lease one or more of the accused products through their websites, retailers, resellers, and distributors.

188.    Since becoming aware of the '614 patent, Home Depot's advertising and sales of one or more of the accused products have intentionally, actively, knowingly, and willfully contained and continue to contain instructions, directions, suggestions, and/or invitations that intentionally, actively, and knowingly invite, entice, lead on, influence, prevail on, move by persuasion, cause, and/or influence the public, Home Depot's distributors, Home Depot's retailers, Home Depot's customers, and/or homedepot.com website users to practice the inventions claimed in the '614 patent with the accused products, and thus directly infringe the '614 patent, either literally or by equivalents.

189.    Since becoming aware of the '614 patent, Home Depot has been willfully blind, has known, or should have known that the public's, the distributors', the retailers', the customers', and/or the website users' acts related to the accused products practice the inventions claimed in the '614 patent and directly infringe, either literally or by equivalents, at least claim 14 of the '614 patent.

190.    For example, Home Depot's inducements include knowingly inducing its retail customers to make within the United States an infringing apparatus—one or more objects insulated with an accused product.  Through its website, Home Depot offers and provides training and service support to its customers.[17]  On information and belief, since becoming aware of the '614 patent, through providing support to its customers regarding making an infringing apparatus—one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation, insulated with an accused product—Home Depot has known that its

---

[17]   *See*  http://www.homedepot.com/p/Reflectix-2-ft-x-10-ft-Reflective-Insulation-BP24010/100318552#.U mqN8BDO18H (copies attached as **Exs. H & I**).

customers are making an infringing apparatus and thereby directly infringing, at least claim 14 of the '614 patent.   On information and belief, despite having this knowledge of infringement, Home Depot has continued to encourage customers to make an infringing apparatus.

191.   Home Depot is thus liable for infringement of at least claim 14 of the '614 patent pursuant to 35 U.S.C. § 271(b).

192.   Home Depot has profited through inducing infringement of the '614 patent.   As a result of Home Depot's unlawful infringement of the '614 patent, Promethean has suffered and will continue to suffer damage.   Promethean is entitled to recover from Home Depot damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## Contributory Infringement by Reflectix and Sealed Air

193.   Promethean incorporates by reference paragraphs 1–191 above as if fully set forth below.

194.   At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air had actual knowledge of the '614 patent as a matter of law.

195.   At least as early as the date of being served with the complaint in this case, Reflectix and Sealed Air were willfully blind towards the existence of the '614 patent.

196.   On information and belief, in view of related Canadian litigation, prior licensing discussions, and the close-knit nature of the reflective insulation industry, Reflectix and Sealed Air may have had actual knowledge of the '614 patent as early as January 1, 2013, its date of issuance.

197.   Since becoming aware of the '614 patent, Reflectix and Sealed Air have intentionally, actively, and knowingly offered to sell or sold the accused products within the

United States or imported the accused products into the United States.

198.    By selling, offering to sell, and/or importing into the United States one or more of the accused products and the components thereof, Reflectix and Sealed Air have contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the accused products to practice the inventions claimed in the '614 patent, and thus directly infringe the '614 patent, either literally or under the doctrine of equivalents.

199.    Since becoming aware of the '614 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the accused products are especially made and/or especially adapted for uses that infringe at least claim 14 of the '614 patent.

200.    The accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

201.    Since becoming aware of the '614 patent, Reflectix and Sealed Air have been willfully blind, have known, or should have known that the accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

202.    For example, Reflectix and Sealed Air offer to sell and sell Home Depot—one of their customers and/or retailers—the accused products.  As demonstrated by the advertising and marketing materials available on both Reflectix and Sealed Air's, and Home Depot's website for the accused products, the accused products have no substantial use other than use in conjunction with insulating one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation, with an accused product.

203.    For these reasons, Reflectix and Sealed Air are contributory infringers of at least claim 14 of the '614 patent, either literally or under the doctrine of equivalents.

**Contributory Infringement by Home Depot**

204.    Promethean incorporates by reference paragraphs 1–202 above as if fully set forth below.

205.    At least as early as the date of being served with the complaint in this case, Home Depot had actual knowledge of the '614 patent as a matter of law.

206.    At least as early as the date of being served with the complaint in this case, Home Depot was willfully blind towards the existence of the '614 patent.

207.    Since becoming aware of the '614 patent, Home Depot has intentionally, actively, and knowingly offered to sell or sold the accused products within the United States or imported the accused products into the United States.

208.    By selling, offering to sell, and/or importing into the United States one or more of the accused products and the components thereof, Home Depot has contributed to infringement by the public, the distributors, the retailers, the customers and the website users who import, export, make, use, sell, offer to sell, lease, and/or offer to lease one or more of the accused products to practice the inventions claimed in the '614 patent, and thus directly infringe the '614 patent, either literally or under the doctrine of equivalents.

209.    Since becoming aware of the '614 patent, Home Depot has been willfully blind, have known, or should have known that the accused products are especially made and/or especially adapted for uses that infringe at least claim 14 of the '614 patent.

210.    The accused products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

211.    Since becoming aware of the '614 patent, Home Depot has been willfully blind, have known, or should have known that the accused products are not a staple article or

commodity of commerce suitable for substantial noninfringing use.

212.    For example, Home Depot offers to sell and sells the accused products to customers.  As demonstrated by the advertising and marketing materials available on Home Depot's website for the accused products, the accused products have no substantial use other than use in conjunction with insulating one or more objects, such as commercial or residential buildings requiring Class A standard thermal insulation, with an accused product.

213.    For these reasons, Home Depot is a contributory infringer of at least claim 14 of the '614 patent, either literally or under the doctrine of equivalents.

## PRAYER FOR RELIEF

WHEREFORE, Promethean prays for the following relief against Defendants:

A.    A judgment that Home Depot has directly infringed the '410 patent, the '411 patent, the '871 patent, the '601 patent, and the '614 patent;

B.    A judgment that Defendants have induced others to infringe the '410 patent, the '411 patent, the '871 patent, the '601 patent, and the '614 patent;

C.    A judgment that Defendants have contributed to the infringement of the '871 patent and the '614 patent;

D.    An award of all damages recoverable under the laws of the United States in an amount to be proven at trial;

E.    An award of treble damages pursuant to 35 U.S.C. § 284 against Reflectix and Sealed Air as a result of Reflectix and Sealed Air's willful infringement;

F.    A judgment and order requiring Defendants to pay Promethean pre-judgment and post-judgment interest on the full amounts of the damages awarded;

G.    A judgment and order requiring Defendants to pay the costs of this case (including all disbursements) and attorneys' fees provided by 35 U.S.C. § 285, with prejudgment interest; and

H.    Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Respectfully submitted,

Date: December 18, 2013

/s/ *Danny L. Williams*

Danny L. Williams, Texas Bar No. 21518050
Brian K. Buss, Texas Bar No. 00798089
Matthew R. Rodgers, Texas Bar No. 24041802
**WILLIAMS MORGAN, P.C.**
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011
danny@wmalaw.com
bbuss@wmalaw.com
mrodgers@wmalaw.com

***Attorneys for Plaintiff***