IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PROMETHEAN INSULATION TECHNOLOGY LLC, | § § § § § § § § § § § § | Civil Action No. 2:13-cv-01113-JRG-RSP (Lead Case) |
| Plaintiff, | | Civil Action No. 2:13-CV-01122-JRG-RSP (Individual Case) |
| v. | | |
| | | Civil Action No. 2:13-cv-01124-JRG-RSP (Individual Case) |
| SEALED AIR CORPORATION, ET AL., | | |
| Defendants. | | Civil Action No. 2:13-cv-01127-JRG-RSP (Individual Case) |

**RETAILER DEFENDANTS' MOTION TO STAY**

Defendants Innovative Insulation, Inc., TVM Building Products, Inc., Energy Efficient Solutions, LLC, and Home Depot U.S.A., Inc. (collectively, "Retailer Defendants") respectfully request that the Court stay the case against them pending resolution of the claims against Reflectix, Inc., SOPREMA, Inc. (United States), SOPREMA, Inc. (Canada), and SOPREMA U.S.A., Inc. (collectively, "Manufacturing Defendants").  In the alternative, Retailer Defendants respectfully request that the Court bifurcate liability and validity from damages in this case, and stay the case against Retailer Defendants until liability and validity determinations are reached for the Manufacturing Defendants.

**I.     INTRODUCTION**

The Manufacturing Defendants are the "true defendants" in this case.  The Retailer Defendants do not make any of the products accused of infringement in Plaintiff Promethean Insulation Technology LLC's Disclosures Pursuant to Local Patent Rules 3-1 ("Accused Products") or any components of the Accused Products.  *See* Declaration at Exhibit A.  The Retailer Defendants further do not use the Accused Products in any of the allegedly infringing

manners. *See* Declaration at Exhibit A. Instead, the Retailer Defendants merely purchase the Accused Products from the Manufacturing Defendants and resell the Accused Products to third parties. *See* Declaration at Exhibit A.

For this reason, the Retailer Defendants do not participate or have any involvement in the design, development, or manufacture of the Accused Products. *See* Declaration at Exhibit A. The Retailer Defendants similarly do not participate or have any involvement in the use of the Accused Products. *See* Declaration at Exhibit A. Any documents within the possession, custody, or control of Retailer Defendants that relate to the design, development, manufacture, or use of the Accused Products are either provided by the Manufacturing Defendants or third parties or are created based largely on information received from the Manufacturing Defendants or third parties.[1]

Notably, the case is young. Trial will not occur for another year. *See* Dkt. 81. Furthermore, claim construction and expert reports have not taken place. *See id.* Limited discovery has taken place, such as exchange of initial disclosures, responses to Plaintiff's first set of common interrogatories, and technical and financial document production. However, many time- and cost-intensive discovery activities remain, including costly e-mail collection and production, depositions of fact witnesses, and expert discovery, among other things. *See id.*

## II. THE COURT SHOULD STAY THE CASE AGAINST THE RETAILER DEFENDANTS.

The Court should stay the case against the Retailer Defendants under the same general principles that govern the customer-suit exception. This Court has recognized that the customer-suit exception has recently been applied in multi-defendant cases where both a manufacturer and retailer are defendants in the same case. *See Secure Axcess, LLC v. Nintendo of Am. Inc.*, Case No.

---

[1] Any such documents of which the Retailer Defendants are aware at this time have been produced pursuant to the Local Rules of the Eastern District of Texas, the applicable Court orders, and/or requests from Plaintiff.

2:13-CV-32-JRG, 2014 WL 986169, at *2 (E.D. Tex. Mar. 7, 2014). The Federal Circuit agreed with this Court that, while circumstances may differ from the traditional application of the customer-suit exception, the same general principles can apply where claims against the manufacturer and retailer exist in the same case. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). The general principles of the customer-suit exception exist to avoid imposing burdens of trial on a customer defendant, as the manufacturer is generally the "true defendant," and further to facilitate just, convenient, efficient, and less expensive determination of a case. *See id.* These opportunities to promote efficiency and convenience arise, for example, when the issues of infringement and validity in a patent infringement case are common to a manufacturer defendant and a retailer defendant, or when collection of damages from a manufacturer defendant would preclude suit against a retailer defendant. *See id.*

In a recent case relating to the customer-suit exception, this Court analyzed the following factors when determining whether to sever, transfer, and stay a case: (1) whether the claims against the retailers are peripheral to the claims against the manufacturer, (2) whether adjudication of the severed claims would potentially dispose of the remaining claims, and (3) whether the § 1404(a) factors warrant transfer of the severed claims. *Secure Axcess, LLC*, 2014 WL 986169, at *4. Because the Manufacturing Defendants do not presently seek a transfer, only the first two factors are relevant. When considering whether to stay a case generally, a court may look to (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Microlinc, LLC v. Intel Corp.*, Case No. 2:07-cv-488, 2010 WL 3766655, at *1 (E.D. Tex. Sept. 20, 2010).

### A. The Claims Against the Retailer Defendants Are Peripheral to the Claims Against the Manufacturing Defendants.

The claims against the Retailer Defendants are peripheral to those against the Manufacturing Defendants. The Retailer Defendants' sole alleged relevant conduct is the resale of the Manufacturing Defendants' products, which are allegedly used in indirectly infringing manners. The Retailer Defendants do not participate or have any involvement in the design, development, or manufacture of the Accused Products and, therefore, have little relevant, nonduplicative evidence to offer relating to design, development, or manufacture, if any. *See In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[T]he retailers will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works."); *see also Am. Vehicular Sciences LLC v. Toyota Motor Co.*, Case No. 6:12cv404 MHS–JDL, 2014 WL 3385149, at *2 (E.D. Tex. July 10, 2014) (noting that moving defendant "has no part in the manufacture, research, development, or engineering of [the accused products], nor the installation of any items that alter the accused structures or systems"); *see also* Declaration at Exhibit A. Further, the Retailer Defendants do not use the Accused Products in any of the allegedly infringing manners and, similarly, have little relevant, nonduplicative evidence to offer relating to use, if any. *See In re Nintendo Co., Ltd.*, 544 F. App'x at 941; *see also Am. Vehicular Sciences*, 2014 WL 3385149, at *2; *see also* Declaration at Exhibit A. Instead, the Retailer Defendants merely purchase the Accused Products from the Manufacturing Defendants and resell the Accused Products to third parties. *See, e.g., Shifferaw v. Emson USA*, Case No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, *3 (E.D. Tex. Mar. 18, 2010) ("[Retailer defendants] are only peripherally involved, with their only relevant conduct being the resale of the products purchased from [manufacturing defendant]."); *see also* Declaration at Exhibit A.

A great majority of any discovery sought from the Retailer Defendants can be obtained from the Manufacturing Defendants or third parties that use the Accused Products in allegedly infringing manners. For example, documents relating to the design, development, or manufacture of the Accused Products are in the possession, custody, or control of the Manufacturing Defendants, and any such documents in the possession, custody, or control of the Retailer Defendants are either provided by the Manufacturing Defendants or created based largely on information received from the Manufacturing Defendants. Similarly, the Retailer Defendants cannot provide any discovery responses or deposition testimony relating to the design, development, manufacture, or use of the Accused Products beyond mere speculation. Further, Retailer Defendants have already provided relevant non-technical documents relating to the Accused Products in their possession, custody, or control, such as marketing, advertising, and/or financial documents. *See* Declaration at Exhibit A. Therefore, any additional information sought from the Retailer Defendants either is not within the possession, custody, or control of the Retailer Defendants or would be largely duplicative and unduly expensive in view of its probative value.

Furthermore, the core questions of infringement and validity can be resolved by litigating the claims against the Manufacturing Defendants alone. *See Secure Axcess, LLC*, 2014 WL 986169, at *3. Due to their peripheral involvement, the Retailer Defendants have little, if anything, to contribute to the liability determination relating to the Accused Products, and any validity case would not differ from the Manufacturing Defendants. Moreover, given that the Retailer Defendants' sole alleged relevant conduct is the resale of the Manufacturing Defendants' products, Plaintiff's overall damages theory likely will not differ from defendant-to-defendant.[2]

---

[2] To the extent the Court is concerned that the damages portion of this case may differ among defendants significantly enough to warrant declining to stay the case against the Retailer Defendants, Retailer Defendants provide an alternative solution to increase judicial efficiency and decrease costs in Section III below.

Finally, Retailer Defendants are fully indemnified by Manufacturing Defendants. "A claim against a retailer is much more likely to be considered 'peripheral' when a manufacturer has 'indemnified and is funding the defense' of the retailer." *Am. Vehicular Sciences*, 2014 WL 3385149, at *3.  Thus, the claims of plaintiff against the Retailer Defendants are "clearly peripheral" to the claims against the Manufacturing Defendants. *See id.*

In view of the above, the peripheral nature of the Retailer Defendants favors a stay of this case against them.  Allowing the case to proceed against the Manufacturing Defendants alone will decrease costs by avoiding peripheral or duplicative issues and will increase efficiency by focusing efforts on those defendants with knowledge of the substantive issues in this case.

**B.      Adjudication of the Claims Against the Manufacturing Defendants Would Potentially Dispose of the Case.**

Adjudication of the claims against the Manufacturing Defendants may resolve all issues in this case.  If the Court or a jury finds the patents-in-suit are invalid, the entire case will be resolved against all parties.  Further, because the Retailer Defendants merely resell products from the Manufacturing Defendants, if the Court or a jury finds that use of the Accused Products does not infringe the patents-in-suit, the entire case will also be resolved for all parties. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1366 (noting that the plaintiff had no claim against the retailer defendants unless the infringement claims against the manufacturing defendant were resolved in the plaintiff's favor).  Moreover, if a stay is instituted, the Retailer Defendants have agreed to be bound by the Court's or a jury's determination of liability and validity for the Manufacturing Defendants and, therefore, even if the Court or a jury finds that the patents-in-suit are valid and infringed, the liability and validity portions of the case will be resolved for all parties. *See* Declaration at Exhibit A; *see also Shifferaw*, 2010 WL 1064380, *3 ("[T]he fact that the Retailer Defendants will stipulate that they will be bound by the rulings [against the manufacturing defendant] weighs

heavily towards a finding that adjudication of the claims against [the manufacturing defendant] would likely dispose of the rest of the case."). Additionally, Plaintiff cannot seek damages from both Manufacturing Defendants and Retailer Defendants. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1365; *see also Shifferaw*, 2010 WL 1064380, at *3. Therefore, assuming liability and validity are found in Plaintiff's favor, and to the extent Plaintiff seeks damages from Manufacturing Defendants, the case will be entirely resolved for Retailer Defendants.

The single instance in which adjudication of claims against the Manufacturing Defendants would not dispose of all claims against the Retailer Defendants occurs if liability and validity are found in Plaintiff's favor, and if Plaintiff elects to collect damages from Retailer Defendants. This Court has acknowledged that, in practice, it is "very often accurate" that plaintiffs do not pursue a judgment from retailer defendants. *See Secure Axcess, LLC*, 2014 WL 986169, at *3. Nevertheless, if the most likely course is not pursued by Plaintiff, the Court can lift the stay against the Retailer Defendants for a damages determination. This Court's concern in *Secure Axcess* that a district court with little or no knowledge of the case would be left to adjudicate damages is not present here. *See id.* Instead, by staying the case against the Retailer Defendants, this Court could still adjudicate damages for the Retailer Defendants if required, while preserving party and judicial resources with a stay in the more likely event that Plaintiff attempts to collect from the Manufacturing Defendants.[3]

Given that all but one scenario leads to disposal of the entire case against the Retailer Defendants, this factor also weighs in favor of a stay. In the one unlikely scenario that does not dispose of the entire case against the Retailer Defendant, a stay would afford the Court the ability

---

[3] To the extent the Court is concerned that pursuing judgment from the Retailer Defendants is likely enough to warrant declining to stay the case against the Retailer Defendants, Retailer Defendants provide an alternative solution to increase judicial efficiency and decrease costs in Section III below.

to address damages for the Retailer Defendants in a streamlined, cost effective, and efficient manner.

### C. A Stay Will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiff.

Granting the requested stay will not unduly prejudice or present a clear tactical disadvantage to the Plaintiff. As discussed in detail above, the Retailer Defendants are peripherally involved in this action, and their sole alleged relevant conduct is the resale of the Manufacturing Defendants' products that can be used in allegedly indirectly infringing manners. Therefore, the Retailer Defendants have little relevant, non-duplicative information to provide through discovery responses or document production, and, to the extent they do, it was provided. A vast majority of the relevant substantive information in this case can be obtained from the Manufacturing Defendants, including information relating to theories of the case, lay and expert witnesses, and the Accused Products. Any disadvantage arising from having to lift the stay for a damages determination for the Retailer Defendants – in the unlikely scenario that it is required – is substantially mitigated because this Court will already have significant knowledge of the case, and the Plaintiff was provided with the Retailer Defendants' financial production. Instead, a stay of this case for the Retailer Defendants will benefit the Plaintiff because the Plaintiff will not have to wade through duplicative document productions or discovery responses that defer to the knowledge of the Manufacturing Defendants or third parties.

### D. A Stay Will Simplify Issues in Question and Trial.

Staying the case against the Retailer Defendants will simplify the issues in question and trial of the case. Four fewer defendants will remain active in the case, enabling the parties and the Court (and all related inquiries) to focus on the Manufacturing Defendants – those with knowledge of the design, development, and construction of the Accused Products. As above, if a stay is

instituted, the Retailer Defendants have agreed to be bound by liability and validity determinations related to the Manufacturing Defendants. Therefore, fact-finding for the Retailer Defendants will be limited to damages alone, which itself may be eliminated. Accordingly, the requested stay will streamline the case to focus on the "true" Manufacturing Defendants and simplify any fact-finding for the Retailer Defendants, with the distinct possibility of eliminating issues relating to the Retailer Defendants entirely.

### E.  The Case Is Young, and Significant Costs Can Be Saved.

The procedural posture of this case also weighs in favor of a stay for the Retailer Defendants. Trial is a year away. *See* Dkt. 81. Only limited discovery has taken place, including exchange of initial disclosures, technical and non-technical document production, and responses to a first set of interrogatories. However, discovery is far from complete and, if allowed to continue for the Retailer Defendants, will amount to significant costs to the Retailer Defendants for depositions, additional interrogatory requests, additional document requests (including the substantial burden of e-mail collection and production), and expert discovery, all of which would be largely duplicative, irrelevant, and/or unnecessary given the peripheral nature of the Retailer Defendants. *See Constellation IP, LLC v. Allstate Corp.*, Case No. 5:07-CV-132, 2008 WL 4787625, at *3 (E.D. Tex. May 12, 2008).

This case is uniquely positioned in favor of a stay for the Retailer Defendants because enough discovery has occurred to demonstrate the peripheral role of Retailer Defendants and the resulting duplicative discovery responses, yet significant costs can still be prevented in avoiding further discovery that will have little probative value.

### III. ALTERNATIVELY, THE COURT SHOULD BIFURCATE LIABILITY AND VALIDITY FROM DAMAGES AND STAY THE CASE AGAINST THE RETAILER DEFENDANTS.

As an alternative means to decrease cost and increase efficiency in this case, the Court can bifurcate determination of liability and validity from damages, and stay the case for the Retailer Defendants until resolution of liability and validity for the Manufacturing Defendants. District courts, in their discretion, may bifurcate damages issues from liability issues in patent infringement cases. *See SimpleAir, Inc. v. Microsoft Corp. et al.*, Case No. 2:11-CV-416-JRG, Dkt. 634, at 2 (E.D. Tex. Feb. 10, 2014). Particularly in patent cases, bifurcation can be an effective method of simplifying factual presentation, reducing costs, and saving time. *Intel Corp. v. Commonwealth Scientific and Indus. Research Organisation*, Case No. 6:06-CV-00551, 2008 WL 5378037, *6 (E.D. Tex. Dec. 23, 2008). Moreover, patent cases involving numerous parties with identical issues relating to liability and a predominance of individual issues relating to damages are "precisely the kind of case that warrants bifurcation of liability and damages issues for trial." *Id.* This Court has ordered similar relief in a recent case with similar facts. *See Secure Axcess, LLC*, 2014 WL 986169, at *6 ("[T]he Court **ORDERS** bifurcation of the liability/validity issues from the issue of damages and **STAYS** the case against the Retailer Defendants as to damages until a disposition of the liability/validity issues has been reached or until subsequent order of this Court.").

This is "precisely the kind of case that warrants bifurcation of liability and damages issues." *See Intel Corp.*, 2008 WL 5378037, *6. The case involves numerous parties – four Manufacturing Defendants and four Retailer Defendants. The Retailer Defendants have identical validity issues to the Manufacturing Defendants. Further, the Retailer Defendants will likely have identical or substantially similar liability issues as the Manufacturing Defendants because they

merely purchase the Accused Products from the Manufacturing Defendants and sell the Accused Products to third parties. Moreover, the liability issues are effectively identical because the Retailer Defendants have agreed to be bound by the liability determinations relating to the Manufacturing Defendants if a stay is instituted. To the extent there are any differences in issues between the Manufacturing Defendants and Retailer Defendants, the differences would relate to damages.

Further, bifurcating liability/validity from damages and staying the case against the Retailer Defendants encourages the general principles of the customer-suit exception. The Manufacturing Defendants are the "true defendants." The Retailer Defendants can offer little, if anything, toward the substantive issues in this case and should not be imposed with the burdens of trial over liability and validity. The requested bifurcation and stay would facilitate just, convenient, efficient, and less expensive determination of this case, as this case could be resolved entirely for the Retailer Defendants with little to no additional cost without any significant prejudice to the Plaintiff. *See id.*

## IV. CONCLUSION

For the foregoing reasons, the Retailer Defendants respectfully request that the Court stay this action against them. In the alternative, the Retailer Defendants respectfully request that the Court bifurcate liability and validity from damages, and stay the case against them until resolution of the liability and validity case against the Manufacturing Defendants.

| | |
|---|---|
| Date: September 25, 2014 | By: */s/ Brett C. Govett*<br>Brett C. Govett<br>State Bar No. 08235900<br>Dustin Mauck<br>State Bar No. 24046373<br>James V. Leito IV<br>State Bar No. 24054950<br>Brandon J. Karam<br>State Bar No. 24074512<br>Fulbright & Jaworski LLP<br>2200 Ross Avenue, Suite 2800<br>Dallas, TX 75201-2784<br>Tel: (214) 855-8000<br>Fax: (214) 855-8200<br>brett.govett@nortonrosefulbright.com<br>dustin.mauck@nortonrosefulbright.com<br>james.leito@nortonrosefulbright.com<br>brandon.karam@nortonrosefulbright.com<br><br>COUNSEL FOR THE RETAILER DEFENDANTS |

## **CERTIFICATE OF SERVICE**

I certify that this document was filed electronically pursuant to Local Rule CV-5(a) on September 25, 2014. Pursuant to Local Rule CV-5(a)(3)(A), this electronic filing acts to electronically serve all counsel who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Brett C. Govett*
Brett C. Govett

## **CERTIFICATE OF CONFERENCE**

I certify that I have complied with the meet and confer requirement in Local Rule CV-7(h), and that this motion is opposed. A telephonic conference relating to this motion was held on September 22, 2014 between Brian Buss, counsel for Plaintiff, and Brett Govett and Brandon Karam, counsel for the moving Defendants. On September 25, 2014 counsel for Plaintiff notified counsel for the moving Defendants that Plaintiff opposes this motion, and the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Brett C. Govett*
Brett C. Govett